IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY J. DiVINCENZO | ) | CASE NO. 1:07CV1830 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE OLIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| JULIUS WILSON, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Anthony J. DiVincenzo ("DiVincenzo") petitions this court for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on June 20, 2007. DiVincenzo is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. DiVincenzo*, Case No. 05 CR 0035 (Medina County 2006). For the reasons given below the magistrate judge recommends that the petition be denied.

I

On January 20, 2005 the Medina County grand jury indicted DiVincenzo on one count of aggravated burglary. The state appellate court reviewing DiVincenzo's conviction found the following facts to be relevant to his case:

{¶ 2} On the morning of January 8, 2005, Appellant approached Curtis Hofer who

was removing snow at an apartment complex in Brunswick, Ohio.  Appellant was in a state of panic and urgently requested Mr. Hofer's help.  Appellant explained that he had been abusing cocaine all night and that a man was pursuing him and trying to kill him.  Mr. Hofer told him that he could not help and that he should find someone else to help him. Mr. Hofer then realized he had his mobile phone and phoned the police.  Mr. Hofer did not see anyone that appeared to be following Appellant.  The police arrived shortly thereafter.

{¶ 3} In the meantime, Appellant ran to a nearby house and tried to break a window.  At around 9:00 a.m., Appellant approached Linville Hughes who was in his driveway shoveling snow.  Appellant told Mr. Hughes that he needed help and that someone was going to "shoot us."  Mr. Hughes sensed that Appellant was acting abnormally and walked toward his door to call the police.  Appellant followed Mr. Hughes through the open garage to a door and forced his way in to the house.  Appellant does not dispute that he was not invited to enter Mr. Hughes' home.  Once inside, Appellant repeatedly stated that he needed a gun and began searching the home.  Appellant damaged blinds in one room when he moved them to peer out the window.  Shortly after Appellant entered his home, Mr. Hughes called the police.  Thereafter, Appellant took two steak knives from the kitchen.  He carried them with him as he wandered around the house.  He eventually proceeded back out to the garage where Mr. Hughes and his wife, Delores, kept two vehicles.  Mr. Hughes followed Appellant to the garage because he feared that he would steal one of his vehicles.  Appellant entered the driver's side of Mr. Hughes' truck and tried to operate the controls, but the keys to the truck were located inside the Hughes' home.  Appellant then exited the vehicle and brushed by Mr. Hughes as he re-entered the house.  Once inside, Appellant entered the Hughes' bedroom where he encountered Mrs. Hughes.  Mrs. Hughes directed Appellant out of the house where he surrendered to police.  Police ordered Appellant to drop the knife and lower himself to the ground.  He complied and was placed under arrest.

{¶ 4} On January 20, 2005, Appellant was charged with one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree.  On February 14, 2005, Appellant pled not guilty to the charge.  Appellant's case proceeded to trial before a jury in September 2005.  The jury found Appellant guilty of aggravated burglary and Appellant was sentenced to three years incarceration with credit for fifty days served

*State v. DiVincenzo*, 2006 WL 3478276, at *1 (Ohio App. Dec. 4, 2006).

DiVincenzo filed a timely notice of appeal.  DiVincenzo asserted seven assignments of error in his appeal:

I:   Appellant's conviction of aggravated burglary was against the manifest weight of the evidence.

> II: Appellant's conviction of aggravated burglary was based upon insufficient evidence.
>
> III: The trial court erred in failing to grant appellant's Criminal Rule 29 Motion for Acquittal following the conclusion of the State's Case and following the conclusion of the entire case.
>
> IV. The trial court erred in permitting the State of Ohio to introduce and solicit witness testimony speculating as to appellant's motivation and purpose for entering the vehicle.
>
> V: The trial court erred in permitting the State of Ohio introduce [sic] and solicit witness testimony that appellant invoked his right to counsel during his interview with the investigating authorities.
>
> VI: The trial court erred in failing to instruct the jury on the lesser included offense of criminal trespassing.
>
> VII: The trial court erred in instructing the jury on the offense of criminal mischief as an offense to support the finding of any criminal offense.

On December 4, 2005 the state appellate court overruled DiVincenzo's assignments of error and affirmed the judgment of the trial court. The court dismissed DiVincenzo's fifth and seventh assignments of error on procedural grounds for failure to support those claims with specific evidence in the record.

DiVincenzo filed a timely notice of appeal in the Ohio Supreme Court. In his memorandum in support of jurisdiction, DiVincenzo asserted a single proposition of law:

> **PROPOSITION OF LAW No. I:**
>
> WHEN APPELLATE COUNSEL FAILS TO PRESENT AN ISSUE OF LAW TO AN APPELLATE COURT IN THE MANNER MANDATED BY THE RULES OF COURT, AND THE APPELLATE COURT DECLINES TO ADDRESS THOSE CLAIMS, APPELLANT IS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

On April 18, 2007, the Ohio Supreme Court denied DiVincenzo leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

DiVincenzo filed in this court a petition for a writ of habeas corpus on June 20, 2007. DiVincenzo asserts one ground for relief in his petition:

> A. Ground one: Petitioner was denied his sixth amendment right to effective assistance to counsel on direct appeal.
>
> Supporting Facts: Appellate counsel erred by presenting an argument with valid merit; however, due to a fatal procedural error the court of appeals failed to address the merits of the error in the trial court.

Respondent filed an Answer on October 25, 2007. Doc. No. 10. DiVincenzo filed a Traverse on February 21, 2008. Doc. No. 15. Thus, the petition is ready for decision.

II

*A. Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

DiVincenzo was convicted in the court of common pleas in Medina County. At the time he filed his writ of habeas corpus in the Northern District of Ohio, he was in prison pursuant to that conviction.[1] This court has jurisdiction over DiVincenzo's petition.

---

[1] DiVincenzo has since been released to post-release control. Federal jurisdiction attaches on a petition for a writ of habeas corpus when an petitioner in custody files for the writ. Jurisdiction is not defeated solely by the release of the petitioner before completion of proceedings on the application. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). When petitioner continues to suffer "collateral consequences" of an imposed sentence sufficient to give the petitioner "a substantial stake in the judgment of conviction which survives the

4

*B.	Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. DiVincenzo's claim involves legal issues which can be independently resolved without additional factual inquiry.

*C.	Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the

---

satisfaction of the sentence imposed on him," the cause is not moot. *Id.* at 237 (quoting *Fiswick v. United States*, 329 U.S. 211, 222).

Collateral consequences are sufficient to avoid mootness when they are severe, immediate (i.e., not speculative), and not shared by the public generally. *Hensley v. Municipal Court*, 411 U.S. 345, 351-52 (1973). Collateral consequences sufficient to avoid mootness include restraints on liberty accompanying release on recognizance pending trial (*Id.*; *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 319-20 (1984)) and civil disabilities resulting from a felony conviction (*Carafas* at 237). DiVincenzo's release on to state control is not sufficient to defeat jurisdiction.

exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

DiVincenzo has no remaining state remedies for his claims. Because DiVincenzo has no remaining state remedies, his claims are exhausted.

*D.    Procedural default*

Procedural default occurs when a petitioner fails to present his constitutional claims fairly to the highest state court in a federal constitutional context. *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent does not argue that DiVincenzo has procedurally defaulted any of his claims.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ

6

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an

7

opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider DiVincenzo's ground for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

DiVincenzo argues that he was deprived of the effective assistance of appellate counsel in violation of his rights under the Sixth Amendment when appellate counsel caused DiVincenzo to default two of his claims on appeal. Respondent replies that DiVincenzo was not prejudiced by his appellate counsel's deficiencies.

Defendants have a right to appointed counsel for the first appeal of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is applicable to claims of ineffective assistance of appellate counsel. *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d

8

1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130

F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

DiVincenzo asserts that he was prejudiced when appellate counsel failed to cite specific evidence in the record to support his fifth and seventh assignments of error on appeal. DiVincenzo's fifth assignment of error claimed that his due process rights were violated when the court allowed the state to solicit testimony that DiVincenzo asserted his right to counsel during his interview with investigative authorities and did not afterwards

give the jury a curative instruction.  DiVincenzo admits that the witness in question did not actually testify that DiVincenzo asserted his right to an attorney.  The witness, one of the officers who arrested DiVincenzo, testified as follows:

> Q.    . . . [The defense attorney] specifically asked you the question, "Was Mr. DiVincenzo cooperative" and "Did he speak openly and freely with you at the hospital?"  Do you remember that?
>
> A.    Yes.
>
> Q.    Was that the whole time?
>
> A.    It was several hours afterwards before he started talking.
>
> Q.    And then he continued to talk freely and told you everything that happened?
>
> A.    Until -- he answered my questions.  And then when I asked him to complete his statement, he declined and said he wanted to talk to --

Transcript of Proceedings, Answer ("Tr."), Exhs. 5-7, p. 133.  At that point, defense counsel objected and asked to speak with the court.  At sidebar, defense counsel claimed that the state was attempting to elicit the improper testimony that DiVincenzo had asserted his right to counsel.  The state replied that it had only asked about whether DiVincenzo was entirely cooperative, testimony that was relevant because defense counsel had asked the officer whether DiVincenzo had cooperated.  The court found that the witness had not yet said anything improper, despite defense counsel's assertion that it was plain to listeners that the officer had been about to say that DiVincenzo asked to speak to his attorney.  Defense counsel did not ask for a curative instruction.

      DiVincenzo argues in his Traverse that any listener could conclude from what the officer said that she had been about to state that he asked to speak with his attorney.  That testimony, DiVincenzo claims, was improper, and it prejudiced the jury against him in a

11

case that depended entirely upon witness credibility. DiVincenzo asserts that had his appellate attorney properly asserted this claim on appeal, he would have won appellate relief. By defaulting this claim, appellate counsel's ineffective assistance prejudiced him.

Even if the court assumes that the state appellate court would have agreed that the officer's testimony was improper and that it had an effect on the jury, DiVincenzo could not have obtained relief on this assignment of error because he would have been unable to demonstrate prejudice resulting from the error. An Ohio appellate court will only grant relief to an appellant alleging trial error upon a showing of prejudice:

> Crim.R. 52(A), which governs the criminal appeal of a nonforfeited error, provides that "[a]ny *error* * * * which does not *affect substantial rights* shall be disregarded." (Emphasis added.) Thus, Crim.R. 52(A) sets forth two requirements that must be satisfied before a reviewing court may correct an alleged error. First, the reviewing court must determine whether there was an "error" -i.e., a "[d]eviation from a legal rule." *United States v. Olano* (1993), 507 U.S. 725, 732-733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Second, the reviewing court must engage in a specific analysis of the trial court record-a so-called "harmless error" inquiry-to determine whether the error "affect[ed] substantial rights" of the criminal defendant. This language has been interpreted to "mean[ ] that the error must have been *prejudicial:* It must have affected the outcome of the [trial] court proceedings." (Emphasis added.) Id. at 734, 113 S.Ct. 1770, 123 L.Ed.2d 508.

*State v. Fisher*, 99 Ohio St.3d 127, 129, 789 N.E.2d 222, 224-25 (2003).

DiVincenzo testified that he ingested cocaine and marijuana, ran outdoors into the snow wearing only a pair of pants, illegally entered a house twice and a car once, and took a knife not belonging to him. Tr. at 201-11. After such testimony and the corroborating testimony of witnesses, it is impossible for any reasonable person to believe that a jury's opinion of DiVincenzo or its ultimate decision could have been affected by an officer's testimony that DiVincenzo asserted his right to an attorney. Because it would have been impossible for appellate counsel to demonstrate that the alleged trial error prejudiced

12

DiVincenzo, it is equally impossible for DiVincenzo to demonstrate that appellate counsel's default of this claim prejudiced him. As DiVincenzo cannot show prejudice resulting from the default, he cannot obtain habeas relief on his claim that appellate counsel's default of his fifth assignment of error constituted ineffective assistance of counsel.

DiVincenzo's seventh assignment of error contends that the trial court erred in instructing the jury regarding the offense of criminal mischief as an underlying offense to support a charge of aggravated burglary when the defense had no notice that the state would use criminal mischief as an underlying offense. Defense counsel objected at trial to the use of criminal mischief as an underlying predicate to the offense of aggravated burglary. The court overruled that objection when the state asserted that it had provided the defense during discovery a recitation of all the facts that would be alleged concerning the alleged burglary. Tr. at 285-88.

Respondent points out that the state used three underlying offenses as joint and alternative predicates to aggravated burglary: the theft of a knife, the attempted theft of an automobile, and criminal mischief.[2] Tr. at 339-40. According to respondent, there was sufficient testimony at trial for the jury to have found that any of the alleged underlying offenses served as a predicate to the offense of aggravated burglary. Thus, even if DiVencenzo is correct that the trial court erred in allowing the instruction as to criminal mischief, DiVincenzo cannot show that he was prejudiced by this error because it is impossible to know which alleged offense or offenses the jury used as an underlying

---

[2] Criminal mischief, codified at Ohio Rev. Code § 2909.07(a)(1), provides that no person shall "[w]ithout privilege to do so, knowingly move, deface, damage, destroy, or otherwise tamper with the property of another . . . ."

13

predicate to aggravated burglary.

DiVincenzo provides no support for his contention that the trial court erred in allowing the jury instruction as to criminal mischief as an underlying predicate for aggravated burglary. DiVincenzo also fails to answer respondent's assertion that he would have been unable to show the appellate court that he was prejudiced by the trial court's alleged error. As has already been demonstrated, absent a showing of prejudice, an Ohio appellate court will not provide relief for alleged trial error. Because DiVincenzo does not demonstrate that his seventh assignment of error would have been successful had appellate counsel not defaulted it, DiVincenzo cannot demonstrate ineffective assistance of appellate counsel for defaulting his seventh assignment of error.

DiVincenzo has not demonstrated that he was prejudiced by his appellate counsel's alleged errors. For this reason, the court should overrule his only ground for relief.

IV

For the reasons given above the court should overrule DiVincenzo's only ground for relief and deny his petition.


Dated:  April 29, 2008                         s\ Nancy A. Vecchiarelli
                                               Nancy A. Vecchiarelli
                                               United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v.Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**